UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                  Plaintiff,<br><br>v.<br><br>NAMEER MOHAMMAD ATTA,<br><br>                                  Defendant. | Case No.:  21-CR-1289-LAB-DEB<br><br>**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR A NEW TRIAL**<br><br>**[DKT. NO. 163]** |

## I.   INTRODUCTION

This Report and Recommendation is made to the Honorable Larry Alan Burns regarding Defendant Nameer Mohammad Atta's Motion for a New Trial (Dkt. No. 163), which the United States opposes (Dkt. No. 164). The parties submitted supplemental briefing (Dkt. Nos. 188–89), and the Court held oral argument (Dkt. No. 194).

For the reasons discussed below, the Court recommends **GRANTING** Atta's Motion.

## II. BACKGROUND

The Grand Jury indicted Defendant Atta for distribution of fentanyl resulting in death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Dkt. No. 1. A jury convicted Atta following a two-day trial. Dkt. No. 109.[1]

Atta's Motion asserts ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984) (establishing standards for ineffective assistance, including a prejudice requirement) and *McCoy v. Louisiana*, 584 U.S. 414 (2018) (defense counsel's admission of client's guilt is structural error requiring reversal). Judge Burns denied Atta's *McCoy* claim and referred Atta's *Strickland* claim to the undersigned for this Report and Recommendation. Dkt. No. 179.

## III. STANDARD OF REVIEW

*Strickland* requires a defendant asserting ineffective assistance of counsel to establish deficient performance and prejudice. 466 U.S. at 687. The performance prong focuses on whether "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* There is a "strong presumption that counsel's conduct falls within the wide range of professional assistance . . . ." *Id.* at 689.

Prejudice requires "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) ("[T]he 'prejudice' component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.").

---

[1] The Court's citations to Docket Numbers refer to the case management/electronic case filing system ("CM/ECF"). Citations to the trial transcript are to the transcript pages, rather than the page numbers affixed by CM/ECF.

"Because failure to meet either prong is fatal to [a defendant's] claim, there is no requirement that [courts] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 697).

## IV. ANALYSIS

The Court first summarizes the evidence and arguments presented at trial, and then analyzes Atta's ineffective assistance claims in the context of this evidence.

### A. The Evidence and Arguments at Trial

The United States presented a straightforward case in a two-day trial. The United States' evidence established: (1) Atta sold counterfeit Percocet pills to the decedent starting on April 17, 2020 and continuing until May 20, 2020 (Dkt. No. 115 at 264–65);[2] (2) the pills contained fentanyl;[3] and (3) the decedent died from a fentanyl overdose on May 21, 2020, the day after Atta sold the decedent twelve fentanyl-laced pills.[4]

In his opening statement, Atta's trial counsel asserted the evidence would not establish the decedent died from anything provided by Atta because: (1) Atta sold Percocet,

---

[2] The United States' evidence included: (1) a Snapchat message from Atta to the decedent offering twelve 30 mg Percocet pills on May 20, 2020 (Dkt. No. 114 at 185–89; Trial Ex. 14 at 5; Trial Ex. 15 at 8); (2) Atta's drug ledger showing sales to the decedent starting April 17, 2020 and ending with the sale of twelve 30 mg Percocet pills on May 20, 2020 (Dkt. No. 115 at 262–67; Trial Ex. 46); and (3) video footage showing the decedent's BMW sedan at Atta's residence on May 20, 2020 (Dkt. No. 115 at 293–96; Trial Exs. 76–80).

[3] The United States' evidence included: (1) expert testimony that the opiate in counterfeit M30 oxycodone pills is fentanyl (Dkt. No. 114 at 162–63); and (2) Atta's own statements that black market M30s are counterfeit and mocking others who believed otherwise (Dkt. No. 115 at 237–50; Trial Ex. 33 at 3; Trial Ex. 35; Trial Ex. 38 at 1-2).

[4] The United States called the medical examiner who performed an autopsy and concluded the decedent died of a fentanyl overdose. Dkt. No. 114 at 117–54.

1  which does not contain fentanyl (Dkt. No. 114 at 48–49); and (2) the evidence would not
2  establish the decedent died of a fentanyl overdose (*id.* at 50–52).

3  Atta's trial counsel developed these defenses through cross-examinations of the
4  United States' witnesses. Counsel's cross-examinations of the first responders established:
5  (1) the decedent was in cardiac arrest when medics arrived; (2) they did not suspect an
6  overdose from their observations of the decedent; and (3) they did not administer Narcan
7  until twenty minutes after their arrival. *Id*. at 79–83, 109–10. Counsel's cross-examination
8  of the medical examiner established the decedent was hospitalized and diagnosed with a
9  stroke one month prior to his death, received steroids upon discharge to reduce brain
10 swelling, and was taking other prescription drugs. *Id*. at 145–52. Finally, trial counsel
11 elicited testimony that the Special Agent who searched the decedent's barracks did not find
12 any of the twelve Percocet pills Atta allegedly sold on May 20, 2020, but did recover other
13 prescription drugs. Dkt. No. 115 at 307–09.

14 In his closing argument, Atta's trial counsel relied on evidence elicited from cross-
15 examinations to argue reasonable doubt existed regarding the cause of death. Trial counsel
16 cited testimony that none of the twelve pills Atta allegedly sold on May 20, 2020 were
17 recovered, thereby creating a reasonable doubt about whether the decedent ever ingested
18 them. *Id.* at 374 ("Who knows what happened to them?"); *id*. at 383 ("[D]o we know that
19 those were taken by [the decedent] or whether he did something else with them?). Trial
20 counsel also argued there was reasonable doubt whether anything in the pills caused the
21 decedent's death. *Id.* at 374 ("[W]ho knew what's in them?"); *id*. at 380 ("Only what's in
22 . . . the toxicology report is what was found in [the decedent's] body. No oxycodone at all.
23 . . . We don't know — who knows what was in those pills."). Trial counsel conceded,
24 however, that the decedent died of a fentanyl overdose. *Id.* at 379 ("What was that
25 substance that killed [the decedent]? It was fentanyl, undoubtedly.").

26 Following the evidence and arguments, the jury convicted Atta of distributing
27 fentanyl and found the distribution resulted in death. *Id.* at 401.
28

### B. Atta's Ineffective Assistance of Counsel Claims

Atta's Motion asserts his trial counsel was ineffective by: (1) failing to consult a forensic pathologist; (2) failing to hire a private investigator; (3) failing to consult a digital forensic consultant; and (4) prohibiting Atta from taking the stand. Atta's trial counsel submitted two declarations endorsing these claims (Dkt. Nos. 163-7, 188-2) and testified at the November 29, 2023 hearing (Dkt. No. 198 at 29–55).

The Court finds trial counsel's performance was deficient by failing to consult a forensic pathologist, and this failure prejudiced Atta. The Court finds neither ineffective assistance nor prejudice on the other claims.

### 1. *Failure to Consult a Forensic Pathologist*

Atta claims his trial counsel was ineffective by failing to consult a forensic pathologist regarding the cause of death. Trial counsel agrees,[5] as does the Court.

An attorney's tactical decisions are given considerable discretion, but only after "procuring the information necessary to make such a decision." *Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006). "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence . . . ." *Harrington v. Richter*, 562 U.S. 86, 106 (2011). "[W]hen the prosecutor's expert witness testifies about pivotal evidence or directly contradicts the defense theory, defense counsel's failure to present expert testimony on that matter may constitute deficient performance." *Duncan v. Ornoski*, 528 F.3d 1222, 1235 (9th Cir. 2008). The need to consult an expert is "especially important" when an attorney "has no knowledge or expertise about the field." *Id.*

In his opening statement, trial counsel's theory of the defense focused on causation: (1) the decedent did not die of a fentanyl overdose; and, regardless, (2) Atta sold Percocet,

---

[5] Dkt. No. 163-7 ¶ 9 ("I believe my performance in failing to consult an independent forensic pathologist . . . constitutes deficient performance of my duties as an attorney.").

not fentanyl. Dkt. No. 114 at 48–52. The medical causation defense required a medical expert to review, interpret, and analyze voluminous medical records, including the decedent's hospitalization one month prior to his death and the autopsy report. *See* Dkt. No. 188 at 4–12, Exs. 1–3 (medical records lodged with the Court and filed under seal at Dkt. No. 200). The United States had such an expert. Atta did not.

All conditions identified by the Supreme Court and the Ninth Circuit requiring an expert are present here: (1) trial counsel's causation defense required consultation with an expert and/or expert testimony; (2) the United States' expert witness testified about pivotal evidence that contradicted the defense; and (3) trial counsel had no expertise in the field. *Harrington*, 562 U.S. at 106; *Duncan*, 528 F.3d at 1235. The Court, therefore, finds trial counsel's failure to consult a medical expert was deficient.

The Court also finds resulting prejudice. Atta's trial counsel attempted to present a medical defense unaided by a medical expert. It did not go well. In fact, it went so poorly that, in his closing argument, trial counsel abandoned the medical causation defense proffered in his opening statement and affirmatively conceded the decedent died of a fentanyl overdose. Dkt. No. 115 at 379 ("What was the substance that killed [the decedent]? It was fentanyl, undoubtedly.").

This abandonment followed trial counsel's cross-examination of the United States' medical expert. The United States' expert successfully parried trial counsel's cross-examination about other possible causes of death (Dkt. No. 114 at 145–52) to the point that trial counsel conceded both the expert's opinion and credibility in his closing argument (Dkt. No. 115 at 375 ("Dr. Platt was credible. . . . I completely agree. I couldn't agree more.")).

A defense expert, however, would have assisted trial counsel with formulating questions and providing a roadmap for cross-examining the United States' expert. Atta's Motion attaches a declaration from Dr. Jane Turner, a certified forensic pathologist, who provides such a roadmap.

Dr. Turner reviewed the medical records and concluded there is "poor scientific evidence for the proposition [the decedent] died of acute opioid intoxication." Dkt. No. 163-1 ¶ 6. Dr. Turner bases her conclusion on: (1) the possibility of postmortem redistribution of fentanyl (*id.* ¶ 7); (2) the absence of anatomic findings supporting a fentanyl overdose (*id.* ¶ 8); (3) indicators of COVID-19 (*id.* ¶ 10); (4) hospitalization records from April 2020 showing a right brain pathology (*id.* ¶ 11); and (5) other "severe medical issues, as evidenced by [the decedent's] hospitalization from April 18-25, 2020" (*id.* ¶ 12). Dr. Turner also identified additional necessary examinations and consultations the United States' expert did not conduct. *Id.* ¶¶ 9, 11; *see also* Dkt. No. 188-4 ¶¶ 8, 10 (Declaration of John C. Ellis proffering Dr. Turner's additional opinions following her review of recently obtained medical records).

The United States persuasively argues Dr. Turner's postmortem redistribution theory is inapplicable here. Dkt. No. 164 at 32–36. Dr. Turner's postmortem redistribution theory relies on studies involving transdermal fentanyl application (i.e., through a skin patch). Dkt. Nos. 163-2, 163-3. This case involves oral ingestion of fentanyl contained in pills. At the March 6, 2024 hearing, Atta's new counsel conceded that no studies support postmortem redistribution of orally ingested fentanyl. Dkt. No. 201 at 8.

The United States also responds to other parts of Dr. Turner's declaration. Dkt. No. 164 at 36–40. Evaluating competing expert opinions, however, is a task for a jury. The Court's role is to determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111–12 (quoting *Strickland*, 466 U.S. at 693).

The Court finds Atta has met this standard. Trial counsel pursued a medical causation defense no attorney unskilled in the medical arts is qualified to present without

expert assistance. Trial counsel took one position in the opening statement (i.e., the evidence would not establish the decedent died of a fentanyl overdose) and said just the opposite in the closing argument (i.e., fentanyl "undoubtedly" was the cause of death). The damage this inflicted upon the credibility of the defense is unknown and unknowable, but the Court cannot imagine that, in a short, two-day trial, the jury did not take notice.

The evidence supporting a fentanyl overdose as the cause of death remains strong. But the United States' expert could not say the amount of fentanyl in decedent's blood was not survivable. Dkt. No. 114 at 130 ("[I]t's not just enough to say that when you're talking about something in a fatal level, there is one number and everything above it, everyone is dead . . . . That's not the case."). Thus, although the level of fentanyl in the decedent's system was exceedingly high (more than 10 times a therapeutic dose (*id.*)), it was theoretically survivable.

The decedent also had a "myriad of preexisting health conditions" to consider as possible alternative causes of death. Dkt. No. 188 (Ex. 3 at 21CR1289-000006).[6] The decedent was hospitalized and diagnosed with a stroke one month before his death. *Id.* Further, based on his overall poor health, including cerebral vasculitis and a possible autoimmune disease, the decedent was awaiting transfer to the Wounded Warrior Battalion. *Id.* Although trial counsel elicited some of these preexisting conditions in the cross-examination of the United States' expert, they were effectively removed from the jury's consideration when trial counsel conceded the issue in his closing argument.

Dr. Turner also opines that the autopsy performed by the United States' expert was incomplete. Dkt. No. 163-1 ¶¶ 9, 11. The jury did not have the opportunity to consider these alleged shortcomings, which, in combination with the decedent's stroke one month prior to his death and overall poor health, establishes a reasonable probability that at least one juror would have found reasonable doubt. *See Browning v. Baker*, 875 F.3d 444,

---

[6] This record is also filed under seal. Dkt. No. 200 at 10.

475–76 (9th Cir. 2017) (finding prejudice under *Strickland* when "at least one juror would have harbored reasonable doubt").

In sum, trial counsel attempted to present a medical causation defense unassisted by an expert. This was deficient and prejudicial and, therefore, constitutes ineffective assistance of counsel under *Strickland*.

### 2. *Failing to Hire a Private Investigator*

Atta also contends his trial counsel was ineffective by failing to hire a private investigator who would have uncovered evidence that: (1) Atta did not sell drugs to the decedent on May 20, 2020; and (2) the decedent was a narcotics distributor and had other sources of controlled substances. Dkt. No. 163 at 8–9. Atta's trial counsel also endorses this claim. Dkt. No. 163-7 ¶ 3; Dkt. No. 188-2 ¶¶ 4–7. The Court, however, finds trial counsel's failure to hire a private investigator was neither deficient nor prejudicial.

The evidence that Atta sold drugs to the decedent on May 20, 2020 was overwhelming. Trial counsel, therefore, reasonably focused the defense on a different element of the offense: whether the drugs Atta provided caused the death. This strategic decision cannot support an ineffective assistance claim. *Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

For this same reason, trial counsel's failure to hire an investigator to verify whether the decedent distributed controlled substances and/or had other sources cannot support an ineffective assistance claim. There was no evidence then and none now to substantiate any claim that the decedent distributed or had other sources of M30/oxycodone pills. Trial counsel, therefore, made a reasonable strategic decision to focus the defense elsewhere.

The Court also finds no prejudice from any failure to hire a private investigator. As discussed above (*see supra* note 3), the United States introduced overwhelming evidence establishing Atta sold M30/oxycodone to the decedent on May 20, 2020. Although the

discovery contains evidence the decedent unsuccessfully sought to have another individual mail him "subs" (slang for Suboxone) on May 19, 2020 (Dkt. No. 163-6 ¶ 7), the individual balked at the decedent's overtures, and there is no evidence this individual (or anyone other than Atta) supplied M30/oxycodone pills to the decedent. Evidence the decedent obtained LSD from one Marine and shared it with two others (*id.* ¶¶ 5–6) also fails to establish a reasonable probability the decedent either redistributed the M30/oxycodone pills he purchased from Atta or had another source for those pills.

In sum, the evidence establishing Atta sold M30 pills to the decedent on May 20, 2020 was overwhelming. Conversely, evidence establishing the decedent had other sources or redistributed the M30s was thin and speculative. Trial counsel's strategic decision to focus the defense elsewhere was neither deficient nor prejudicial.

### 3. Failing to Consult a Digital Forensic Consultant

Atta next contends trial counsel was ineffective by failing to consult a digital forensic consultant. Dkt. No. 163 at 9–10; Dkt. No. 188 at 16. Atta's trial counsel also confesses to this allegation. Dkt. No. 163-7 ¶ 9 ("I believe my performance in failing to consult with . . . [a] digital forensic consultant constituted deficient performance of my duties as an attorney."). Trial counsel's failure to consult a digital forensic consultant, however, was neither deficient nor prejudicial.

This claim arises out of a newspaper article found on Atta's phone that a prosecution witness partially summarized for the jury.[7] The witness told the jury: (1) agents found a screenshot of a newspaper article dated February 14, 2019 on Atta's phone; and (2) the article stated "the M30 pills were being counterfeited and laced with fentanyl." Dkt. No. 115 at 241–42. The Assistant United States Attorney cited this article in closing argument as evidence Atta knew he was distributing fentanyl. *Id.* at 363.

---

[7] The trial judge excluded the article itself under Federal Rule of Evidence 403. Dkt. No. 115 at 211–12.

A post-trial examination of Atta's phone, however, discovered the article may not have been downloaded onto Atta's phone until November 13, 2020. Dkt. No. 163 at 10.[8] This is significant because the events at issue took place on May 20, 2020. Based on this after-the-fact discovery, Atta argues his trial counsel's failure to retain a digital forensic consultant deprived him of effective assistance of counsel.

The Court, however, finds trial counsel's failure to discover this discrepancy before trial was not deficient. The Sixth Amendment "does not necessarily require that every conceivable witness be interviewed or that counsel must pursue 'every path until it bears fruit or until all conceivable hope withers.'" *Clark v. Chappell*, 936 F.3d 944, 975 (9th Cir. 2019) (quoting *United States v. Tucker*, 716 F.2d 576, 584 (9th Cir. 1983)); *see also McGill v. Shinn*, 16 F.4th 666, 692 (9th Cir. 2021) ("'[T]here is no expectation' that an attorney prepare for every possible contingency; she need not be a 'flawless strategist or tactician,' and 'may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.'") (quoting *Harrington*, 562 U.S. at 110).

There is no evidence Atta's trial counsel (or anyone else) was on notice of the date discrepancy before or during trial. Thus, it is not a cognizable as a Sixth Amendment ineffectiveness of counsel claim. *Bell v. Cone*, 535 U.S. 685, 702 (2002) (warning against evaluating counsel's decisions under "the harsh light of hindsight"); *Strickland*, 466 U.S. at 689 (Courts must "evaluate the conduct from counsel's perspective at the time.").

The Court also finds no prejudice from any failure by trial counsel to consult a digital forensic consultant. Although the trial judge almost certainly would have excluded

---

[8] The United States suggests a download to a second phone might explain the date discrepancy. Dkt. No. 164 at 40–42. The Court's analysis, however, assumes the accuracy of Atta's factual premise.

testimony about an article that post-dated the events at issue,[9] the jury heard other evidence establishing the M30/oxycodone pills contained fentanyl. This evidence included: (1) pre-May 2020 messages from Atta establishing his knowledge that black market M30 pills are counterfeit;[10] (2) messages from Atta mocking others who claimed otherwise;[11] and (3) expert testimony that counterfeit M30 pills contain fentanyl.[12]

In sum, there is no evidence trial counsel was on notice of any discrepancy between the date of the article in question and the date it was downloaded onto Atta's phone. Moreover, because the article was cumulative of other, more probative evidence establishing the black market M30s Atta sold contain fentanyl, there is no reasonable probability the jury would have reached a different verdict if it had not heard about the article. The Court, therefore, recommends denying Atta's Motion on this ground.

### 4. *Prohibiting Atta from Testifying*

Atta alleges trial counsel prevented Atta from taking the stand to deny selling drugs to the decedent on May 20, 2020. Dkt. No. 163 at 11–12; Dkt. No. 188 at 15. Trial counsel also supports this claim: "Prior to trial, Mr. Atta informed me that he wanted to testify that he did not sell any substances to [the decedent] on May 20, 2020. The client repeatedly

---

[9] The trial judge admitted the evidence under Federal Rule of Evidence 401 because "it goes to the knowledge of Mr. Atta, that the M30 pills may have been laced with fentanyl." Dkt. No. 115 at 211–12. Anything Atta learned later is not relevant evidence of his knowledge as of May 20, 2020.

[10] *Id.* at 241; Trial Ex. 33 at 3 ("[T]he only prescription ones are the 20's. Anything else is pressed (fake).").

[11] Dkt. No. 115 at 249–50; Trial Ex. 38 at 1 (when another individual claimed to have "M30s. Real script. Swear. No fentanyl," Atta responded, "the fact you said script 30s, LOL. You're retarded.").

[12] Dkt. No. 114 at 163.

12

told me he wanted to testify in the case. But I told him I would not call him, and I do not believe he knew he had a right to overrule me and testify." Dkt. No. 163-7 ¶ 8.[13]

"An accused's right to testify is a constitutional right of fundamental dimension . . . [that] may be relinquished only by the defendant . . . ." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). A defendant waives the right to testify, however, by remaining silent. *See United States v. Pino-Noriega*, 189 F.3d 1089, 1095 (9th Cir. 1999) ("Clearly, if the defendant says nothing until after the verdict has been read, the right has been waived."); *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993) ("When a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived his right to testify."). Thus, "[a] defendant who wants to take the stand may do so 'by insisting on testifying, speaking to the court, or discharging his lawyer.'" *Pino-Noriega*, 189 F.3d at 1095 (quoting *Joelson*, 7 F.3d at 177). Otherwise, a defendant "is presumed to assent to his attorney's tactical decision not to have him testify." *Joelson*, 7 F.3d at 177.

The trial transcript establishes Atta remained silent when his counsel rested without calling him to testify. Dkt. No. 115 at 338. By not speaking up, Atta waived his right to testify, and he may not circumvent this waiver through an ineffective assistance of counsel claim. *Nohara*, 3 F.3d at 1243 (rejecting ineffective assistance of counsel claim because the "defendant [was] silent in the face of his attorney's decision not to call him as a witness . . . .").

Even if the Court were to disregard Atta's waiver, no prejudice resulted. Trial counsel's declaration states Atta desired to take the stand and deny selling drugs to the

---

[13] *See also* Dkt. No. 198 at 45 (Nov. 29, 2023 evidentiary hearing) ("[The issue] was whether I completely ignored my client's request to testify, and I did that several times. I wouldn't say a lot of times, but, you know, at the beginning, during the middle, before trial. I just overrode his decision."); Dkt. No. 188-2 ¶ 8 (Mar. 1, 2024 Suppl. Decl.) ("In fact, even on the last day of trial as the defense advised it was not putting on a case, Mr. Atta tugged at my coat and again told me he wanted to testify. I simply shook my head and shut him down. I did not allow him to testify, nor did I discuss the matter with him further.").

decedent on May 20, 2020. Dkt. No. 163-7 ¶ 8. The evidence to the contrary was overwhelming. The evidence at trial included:

- Snapchat messages between Atta and the decedent arranging for the decedent to pick up drugs from Atta on May 20, 2020 (Dkt. No. 114 at 185–89; Trial Ex. 14 at 5; Trial Ex. 15 at 8);[14]

- Video surveillance showing the decedent at Atta's residence on May 20, 2020 (Dkt. No. 115 at 293–97; Trial Exs. 76–80); and

- Atta's business ledger documenting the sale of twelve 30 mg Percocet pills to the decedent on May 20, 2020 (Dkt. No. 115 at 262–67; Trial Ex. 46).[15]

This evidence leaves no reasonable probability the jury would have reached a different verdict had Atta taken the stand and denied selling the decedent drugs on May 20, 2020. *See Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir. 2009) (holding "[t]he *Strickland* standard is applicable when a petitioner claims an attorney was ineffective by

---

[14] Efren Lapuz, a private investigator Atta retained in connection with this motion, opines Atta's use of the abbreviation "PU" in his May 20, 2020 message to the decedent does not mean "pick up." Dkt. No. 163-6 ¶ 10 (explaining "PU" in "Snapchat and Instagram language means a 'pop-up' message from the sender to the recipient."). The evidence at trial, however, established Atta sent a Snapchat message May 20th inviting the decedent to "PU" twelve 30mg Percocet pills at Atta's "casa" (Spanish for house): "!!$300 – 12 PERC30's PU casa." Dkt. No. 114 at 185–89; Trial Ex. 14 at 5; Trial Ex. 15 at 8. Lapuz's opinion is also undermined by the video footage showing the decedent and his vehicle at Atta's residence on May 20, 2020. Dkt. No. 114 at 154–55; Dkt. No. 115 at 293–96; Trial Exs. 76–80 (stipulation and video footage showing the decedent at Atta's residence on May 20, 2020).

[15] Lapuz also relies on the absence of a May 20, 2020 Venmo transaction to conclude no transaction took place on that date. Dkt. No. 163-6 ¶¶ 8–9. Atta's ledger, however, documents the transaction. The United States' evidence also established Atta frequently received cash for his narcotics transactions. Dkt. No. 115 at 246–54; Trial Ex. 41. The absence of a May 20, 2020 Venmo record, therefore, does not create a reasonable probability a jury would find the May 20, 2020 sale to the decedent documented in Atta's ledger did not occur.

denying him his constitutional right to testify" and finding no prejudice because "the state court was not unreasonable in finding that this testimony would not have assisted [petitioner's] case.").

In sum, Atta waived his right to testify by not affirmatively invoking it. Atta also cannot establish prejudice because there is no reasonable probability the jury would have reached a different verdict if he had taken the stand and denied selling drugs to the decedent on May 20, 2020. The Court, therefore, recommends denying Atta's Motion for a New Trial on this ground.

## V.     CONCLUSION

The Court finds trial counsel's failure to consult a forensic pathologist was deficient and prejudicial and, therefore, recommends granting Atta's Motion for a New Trial on this ground. The Court otherwise finds trial counsel's performance met *Strickland*'s Sixth Amendment standards.

****

**IT IS HEREBY ORDERED** that any written objection to this Report and Recommendation must be filed with the Court and served on all parties no later than **March 29, 2024**. The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir. 1991).

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 5, 2024**.

Dated:  March 15, 2024

_____
Honorable Daniel E. Butcher
United States Magistrate Judge