UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>v.<br><br>NAMEER MOHAMMAD ATTA,<br><br>                          Defendant. | Case No.:  21-cr-1289-LAB<br><br>**ORDER:**<br><br>**(1)  OVERRULING DEFENDANT'S OBJECTIONS, [Dkt. 204];**<br><br>**(2)  SUSTAINING GOVERNMENT'S OBJECTIONS, [Dkt. 203];**<br><br>**(3)  ADOPTING IN PART AND REJECTING IN PART THE REPORT AND RECOMMENDATION, [Dkt. 202]; and**<br><br>**(4)  DENYING DEFENDANT'S MOTION FOR NEW TRIAL, [Dkt. 163, 170]** |

On September 27, 2022, a jury convicted Defendant Nameer Mohammad Atta of distributing fentanyl resulting in the death of another person. (Dkt. 109) Pending sentencing, Atta filed two post-trial motions for new trial in which he

alleged: (1) Government misconduct and (2) violations of Atta's Sixth Amendment right pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), and *McCoy v. Louisiana*, 584 U.S. 414 (2018). (Dkt. 139, 163). The Government opposed the motions. (Dkt. 144, 164).

On November 28, 2023, the Court held a hearing at which Atta's trial counsel, Ezekiel E. Cortez, testified. (Dkt. 165, 198). The Court set a further hearing and requested the parties file supplemental briefs addressing the *McCoy* argument. *(*Dkt. 163, 177). After hearing further argument on that issue, the Court denied the *McCoy* allegations. (Dkt. 179, 193).

This Order now addresses Atta's *Strickland* arguments. The Court referred the *Strickland* allegations to Magistrate Judge Daniel E. Butcher who conducted an evidentiary hearing and, on March 15, 2024, issued his Report and Recommendation ("R&R"). (Dkt. 202). Judge Butcher's R&R sets forth the procedural history of this case, discusses the relevant law governing allegations of ineffective assistance of counsel, and analyzes the parties' arguments. (*Id.*). Judge Butcher recommends rejecting Atta's *Strickland* arguments on all grounds except one: that trial counsel was ineffective in failing to consult a forensic pathologist, which prejudiced Atta's defense. (*Id.* at 5). Both parties timely objected to Judge Butcher's R&R, (Dkt. 203, 204), and responded to the other sides' objections, (Dkt. 205, 206). The Court held oral argument on April 15, 2024, and took the matter under submission. (Dkt. 208).

The Court now **OVERRULES** Atta's objections to the R&R; **SUSTAINS** the Government's objection to that portion of the R&R that recommends finding Atta's defense was prejudiced by counsel's ineffective performance; and **ADOPTS IN PART AND REJECTS IN PART** the R&R.

I.    BACKGROUND

In 2021, a federal Grand Jury indicted Atta for distribution of fentanyl resulting in the death of another person, in violation of 21 U.S.C. §§ 841(a)(1),

21-cr-1289-LAB

(b)(1)(C). (Dkt. 1). District Judge Todd W. Robinson presided over a two-day trial that concluded with Atta's conviction on September 27, 2022. (Dkt. 103, 107, 109).

Following a series of post-trial continuances, (*see* Dkt. 116, 118, 120), Atta filed two motions: one seeking a new trial based on alleged Government misconduct, (Dkt. 139), and the second seeking to substitute new counsel, John Ellis and Michael Pancer, in place of Atta's trial counsel Ezekial Cortez, (Dkt. 142). Judge Robinson deferred deciding the misconduct motion, but partially granted the motion to substitute counsel, adding attorneys Ellis and Pancer as co-counsel to Cortez. (Dkt. 152).

New counsel for Atta then filed an additional post-trial motion in which they contended that attorney Cortez wrongly conceded Atta's guilt at trial in contravention of the rule announced in *McCoy*, and that attorney Cortez otherwise provided ineffective assistance of counsel under the *Strickland* standards. (*See* Dkt. 163, 197). The Government opposed the additional motion. (Dkt. 164).

The Court deferred ruling on Atta's motion for new trial alleging Government misconduct. Then, after considering oral argument held on January 26, 2024, the Court orally denied Atta's *McCoy* allegations. (Dkt. 179, 193). As to Atta's *Strickland* allegations, the Court referred the matter to Judge Butcher to conduct a hearing and take testimony into Atta's claims. (*Id.*).

## II.   DISCUSSION

To be clear, this Order resolves only Atta's motion for new trial based on *Strickland*. (*See* Dkt. 163). Atta's motion for new trial and/or dismissal based on alleged Government misconduct isn't addressed. (*See* Dkt. 139). That motion remains pending and will be decided by Judge Robinson who presided at Atta's trial and will reassume responsibility for this case. And, to reiterate, this Court previously denied Atta's motion for new trial based on *McCoy*. (Dkt. 179, 193).

As regards to the *Strickland* motion, Atta's new counsel urge four instances in which they contend attorney Cortez performed ineffectively before and

during Atta's trial. (Dkt. 163 at 4; 188 at 1–2). The Government counters that these allegations lack factual support and, regardless, fail to demonstrate Atta was prejudiced. (Dkt. 164 at 1; 189 at 1).

### A.    Legal Standard

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The "statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also* 28 U.S.C. § 636(b)(1)(C). Here, both parties have objected to portions of Judge Butcher's R&R. (Dkt. 203, 204).

### B.    Timeframe for Filing a Motion for New Trial

Federal Rule of Criminal Procedure 33 provides, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The motion requesting a new trial must be filed either within three years after the verdict or finding of guilty if based on newly discovered evidence, or within fourteen days after the verdict or finding of guilty if for any reason other than newly discovered evidence. Fed. R. Crim. P. 33(b)(1)–(2).

The jury convicted Atta on September 27, 2022. (Dkt. 109). Atta didn't bring his *McCoy* and *Strickland* challenges until November 28, 2023, over a year after the jury's verdict. (*See* Dkt. 163). The Government argues Atta's additional post-trial motion came too late, and he can't show the delay is excusable. (Dkt. 164 at 21–24). The Court agrees.

Judge Robinson extended the deadline for Atta's post-trial motions to June 22, 2023. (*See* Dkt. 122, 123). Four days after that deadline expired, on June 26, 2023, Atta sought leave to continue his sentencing hearing to investigate potential ineffective assistance of counsel claims, *i.e.*, the *McCoy* and *Strickland* claims. (*See* Dkt. 142). Judge Robinson extended the date for hearing on any additional

post-trial motion to October 12, 2023, and ruled that Atta's counsel had until September 8, 2023, to file the motion. (*See* Dkt. 156). However, new counsel never requested an extension of time to file, *see* Fed. R. Crim. P. 45(b), and ultimately didn't file the motion until November 28, 2023, eighty-one days late. (*See* Dkt. 163).

The Court rejects any contention that the three-year filing deadline applies here because allegations of ineffective assistance constitute "newly discovered evidence." *See United States v. Hanoum*, 33 F.3d 1128, 1130 (9th Cir. 1994) ("Newly discovered evidence of ineffective assistance of counsel does not directly fit the requirements that the evidence be material to the issues involved, and indicate that a new trial probably would produce an acquittal."). "The newly discovered ineffective assistance of counsel (or conflict of interest) may be raised in a habeas corpus petition." *Id.* at 1131. At this juncture in the proceedings, Atta's *Strickland* motion could be dismissed solely on this ground.

## C.   Ineffective Assistance of Counsel

Regardless of Atta's untimely filing, the Court rejects his several ineffective assistance claims on the merits.

To establish ineffective assistance of counsel, the defendant must prove by a preponderance of evidence that (1) the assistance provided by counsel fell below an objective standard of reasonableness; and (2) there's a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. To satisfy the deficiency prong of the *Strickland* test, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness" and was not "within the range of competence demanded of attorneys in criminal cases." *Id.* at 687 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). There's a "strong presumption that counsel's conduct falls within a wide range of professional assistance." *Id.* at 689. To satisfy the prejudice prong of the *Strickland* test, the defendant must "affirmatively prove prejudice" by showing that counsel's errors "actually had an

adverse effect on the defense." *Id.* at 693.  "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693). Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Atta offers four arguments in support of his ineffective assistance claim: (1) trial counsel failed to hire a private investigator; (2) trial counsel failed to consult a digital forensic consultant; (3) trial counsel prohibited him from testifying at trial; and (4) trial counsel failed to consult a forensic pathologist. (Dkt. 163 at 4–10, 12; 188 at 4–16). The Government's opposes each ground on the merits, and also argues none of the alleged deficiencies affected the outcome of this case. (Dkt. 164 at 49, 56–58; 189 at 2–15).

As to the first three claims, the Court agrees with the R&R that trial counsel's performance didn't fall below the *Strickland* standards and **ADOPTS** Judge Butcher's determination that these claims provide no basis for relief. As to the fourth claim – alleging counsel rendered ineffective assistance by failing to consult a forensic pathologist resulting in prejudice to Atta's defense – the Court **REJECTS** the portion of the R&R that concludes trial counsel's failure to consult a forensic pathologist resulted in prejudice to Atta's case.

### 1.   Private Investigator

Trial counsel admitted he never hired or consulted a private investigator. (Dkt. 163-7 ¶ 3; 188-2 ¶¶ 4–5). Atta maintains an investigator could have uncovered and presented evidence showing: (1) the decedent was a distributor of narcotics; (2) the decedent had other sources for acquiring drugs; and (3) Atta didn't sell drugs to decedent on May 20, 2020. (Dkt. 163 at 8; 188 at 12–15).

As Judge Butcher outlined, trial counsel's failure to hire a private investigator was neither deficient nor prejudicial. (Dkt. 202 at 9–10). According to Judge Butcher:

21-cr-1289-LAB

The evidence that Atta sold drugs to the decedent on May 20, 2020 was overwhelming. Trial counsel, therefore, reasonably focused the defense on a different element of the offense: whether the drugs Atta provided caused the death. This strategic decision cannot support an ineffective assistance claim. *Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

For this same reason, trial counsel's failure to hire an investigator to verify whether the decedent distributed controlled substances and/or had other sources cannot support an ineffective assistance claim. There was no evidence then and none now to substantiate any claim that the decedent distributed or had other sources of M30/oxycodone pills. Trial counsel, therefore, made a reasonable strategic decision to focus the defense elsewhere.

The Court also finds no prejudice from any failure to hire a private investigator. As discussed above (*see supra* note 3), the United States introduced overwhelming evidence establishing Atta sold M30/oxycodone to the decedent on May 20, 2020. Although the discovery contains evidence the decedent unsuccessfully sought to have another individual mail him "subs" (slang for Suboxone) on May 19, 2020 (Dkt. No. 163-6 ¶ 7), the individual balked at the decedent's overtures, and there is no evidence this individual (or anyone other than Atta) supplied M30/oxycodone pills to the decedent. Evidence the decedent obtained LSD from one Marine and shared it with two others (*id.* ¶¶ 5–6) also fails to establish a reasonable probability the decedent either redistributed the M30/oxycodone pills he purchased from Atta or had another source for those pills.

In sum, the evidence establishing Atta sold M30 pills to the decedent on May 20, 2020 was overwhelming. Conversely, evidence establishing the decedent had other

1
2

sources or redistributed the M30s was thin and speculative. Trial counsel's strategic decision to focus the defense elsewhere was neither deficient nor prejudicial.

3

4

(*id.* (alteration in original)).

5

6

7

8

9

10

11

12

13

14

15

16

The only evidence Atta presents suggesting that an independent investigation of the facts would have been helpful is a declaration by private investigator Efren Lapuz, a retired Drug Enforcement Administration agent. (Dkt. 163-6). Lapuz identified several individuals who may have supplied the decedent with drugs, suggesting that the decedent's fatal overdose from fentanyl may not have resulted from drugs Atta sold him on May 20, 2020. (*Id.* ¶¶ 4–10). This evidence raises only a speculative possibility that someone besides Atta caused the decedent's death. *See Bible v. Ryan*, 571 F.3d 860, 871 (9th Cir. 2009) (upholding decision of no *Strickland* prejudice because evidence was "speculative in nature"). Additionally, Judge Butcher's finding that the Government's evidence overwhelmingly established that it was Atta who provided the decedent the drug that killed him, contradicts Lapuz's speculation. (Dkt. 202 at 14 n.14 & n.15).

17

18

19

20

21

22

For the same reasons, the Court agrees with Judge Butcher's R&R that Atta was not prejudiced by trial counsel's decision not to employ a private investigator. *See United States v. Schaflander*, 743 F.2d 714, 719 (9th Cir. 1984) (considering all the evidence in the record, there was no "'reasonable probability that . . . the result of the proceeding would have been different' had additional evidence been introduced").

23

24

The Court **OVERRULES** Atta's objections to this finding and **ADOPTS** this portion of Judge Butcher's R&R.

25

## 2.   Digital Forensic Consultant

26

27

28

Atta contends trial counsel was ineffective in not hiring a digital forensic consultant to counter the Government's evidence that he knew Percocet "M30" pills contained fentanyl. (Dkt. 163 at 9). He maintains a consultant would have

discovered that the screenshot of a newspaper article discussing M30 pills that was found on Atta's phone was not on the phone before the decedent passed away. (*Id.* at 10). Trial counsel admits he never met or conferred with a digital forensic consultant. (Dkt. 163-7 ¶ 4; 188-2 ¶ 6).

Judge Butcher determined that counsel's failure to consult a digital forensic consultant was neither deficient nor prejudicial. (Dkt. 202 at 10–12). According to Judge Butcher:

> This claim arises out of a newspaper article found on Atta's phone that a prosecution witness partially summarized for the jury.[7] The witness told the jury: (1) agents found a screenshot of a newspaper article dated February 14, 2019 on Atta's phone; and (2) the article stated "the M30 pills were being counterfeited and laced with fentanyl." Dkt. No. 115 at 241–42. The Assistant United States Attorney cited this article in closing argument as evidence Atta knew he was distributing fentanyl. *Id.* at 363.
>
> > [7] The trial judge excluded the article itself under Federal Rule of Evidence 403. Dkt. No. 115 at 211–12.
>
> A post-trial examination of Atta's phone, however, discovered the article may not have been downloaded onto Atta's phone until November 13, 2020. Dkt. No. 163 at 10.[8] This is significant because the events at issue took place on May 20, 2020. Based on this after-the-fact discovery, Atta argues his trial counsel's failure to retain a digital forensic consultant deprived him of effective assistance of counsel.
>
> > [8] The United States suggests a download to a second phone might explain the date discrepancy. Dkt. No. 164 at 40–42. The Court's analysis, however, assumes the accuracy of Atta's factual premise.
>
> The Court, however, finds trial counsel's failure to discover this discrepancy before trial was not deficient. The Sixth Amendment "does not necessarily require that every

conceivable witness be interviewed or that counsel must pursue 'every path until it bears fruit or until all conceivable hope withers.'" *Clark v. Chappell*, 936 F.3d 944, 975 (9th Cir. 2019) (quoting *United States v. Tucker*, 716 F.2d 576, 584 (9th Cir. 1983)); *see also McGill v. Shinn*, 16 F.4th 666, 692 (9th Cir. 2021) ("'[T]here is no expectation' that an attorney prepare for every possible contingency; she need not be a 'flawless strategist or tactician,' and 'may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.'") (quoting *Harrington*, 562 U.S. at 110).

There is no evidence Atta's trial counsel (or anyone else) was on notice of the date discrepancy before or during trial. Thus, it is not a cognizable as a Sixth Amendment ineffectiveness of counsel claim. *Bell v. Cone*, 535 U.S. 685, 702 (2002) (warning against evaluating counsel's decisions under "the harsh light of hindsight"); *Strickland*, 466 U.S. at 689 (Courts must "evaluate the conduct from counsel's perspective at the time.").

The Court also finds no prejudice from any failure by trial counsel to consult a digital forensic consultant. Although the trial judge almost certainly would have excluded testimony about an article that post-dated the events at issue,[9] the jury heard other evidence establishing the M30/oxycodone pills contained fentanyl. This evidence included: (1) pre-May 2020 messages from Atta establishing his knowledge that black market M30 pills are counterfeit;[10] (2) messages from Atta mocking others who claimed otherwise;[11] and (3) expert testimony that counterfeit M30 pills contain fentanyl.[12]

> [9] The trial judge admitted the evidence under Federal Rule of Evidence 401 because "it goes to the knowledge of Mr. Atta, that the M30 pills may have been laced with fentanyl." Dkt. No. 115 at 211–12. Anything Atta learned later is not relevant evidence of his knowledge as of May 20, 2020.

[10] *Id.* at 241; Trial Ex. 33 at 3 ("[T]he only prescription ones are the 20's. Anything else is pressed (fake).").

[11] Dkt. No. 115 at 249–50; Trial Ex. 38 at 1 (when another individual claimed to have "M30s. Real script. Swear. No fentanyl," Atta responded, "the fact you said script 30s, LOL. You're retarded.").

[12] Dkt. No. 114 at 163.

In sum, there is no evidence trial counsel was on notice of any discrepancy between the date of the article in question and the date it was downloaded onto Atta's phone. Moreover, because the article was cumulative of other, more probative evidence establishing the black market M30s Atta sold contain fentanyl, there is no reasonable probability the jury would have reached a different verdict if it had not heard about the article. The Court, therefore, recommends denying Atta's Motion on this ground.

(*id.* (alterations in original)).

Atta objects to this part of Judge Butcher's R&R, arguing that trial counsel should have investigated whether metadata on his phone contradicted the inference that he knew M30 pills might contain fentanyl before the decedent died. The record establishes that Atta possessed two phones, one he had before May 20, 2020, and one he acquired after his first phone was seized in April 2021. (Dkt. 164 at 40). At some point, Atta transferred data from the first phone to a second phone. The second phone contained virtually identical content to the first phone. (*Id.*). At trial, the parties agreed to rely on data contained in the second phone. (*Id.*).

The Government maintains the metadata found on the second phone establishes only the date that contents from the first phone were copied, and that Atta could have still viewed the February 2019 article before November 2020. (*Id.*

at 41; *see also* Dkt. 150). While an expert may have been able to raise some doubt as to when Atta took a screenshot of the newspaper article, this would not have overcome other evidence cited by the R&R proving Atta's foreknowledge that M30 pills contained fentanyl. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[F]ailure to take a futile action can never be deficient performance."). Judge Butcher correctly concluded this speculative possibility does not establish that trial counsel's failure to hire a digital forensic consultant rendered counsel ineffective. *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").

In all events, Atta fails to demonstrate that there is a reasonable probability that but for the alleged error, the result of the proceeding would have been different. *Schaflander*, 743 F.2d at 719. Aside from the evidence of the newspaper article found on Atta's second phone, the Government offered substantial evidence to support the inference that Atta knew the M30 pills he was selling were laced with fentanyl. (Dkt. 114 at 163:1–20; 115 at 241:12–8, 243:22–23, 249:24–250:25, 257:10–14, 259:8–15).

The Court **OVERRULES** Atta's objections to this finding and **ADOPTS** this portion of Judge Butcher's R&R.

### 3. Prohibiting Atta From Testifying

Atta argues trial counsel prohibited him from taking the witness stand, despite knowing he wanted to testify at trial. (Dkt. 163 at 12; 188 at 15; *see also* Dkt.163-7 ¶ 8; 188-2 ¶ 8; 198 at 45:6–51:11). The Government counters that Atta's unadorned claim is insufficient to establish his counsel was ineffective. Regardless, testifying would have subjected Atta to damaging cross-examination, and would not have altered the outcome of the case. (Dkt. 164 at 46–47, 56–58; 189 at 13–14).

//

//

21-cr-1289-LAB

Judge Butcher ruled that Atta waived his right to testify by not speaking up during trial. He also agreed Atta suffered no prejudice by not testifying. (Dkt. 202 at 13–15). According to Judge Butcher:

> "An accused's right to testify is a constitutional right of fundamental dimension . . . [that] may be relinquished only by the defendant . . . ." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). A defendant waives the right to testify, however, by remaining silent. *See United States v. Pino-Noriega*, 189 F.3d 1089, 1095 (9th Cir. 1999) ("Clearly, if the defendant says nothing until after the verdict has been read, the right has been waived."); *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993) ("When a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived his right to testify."). Thus, "[a] defendant who wants to take the stand may do so 'by insisting on testifying, speaking to the court, or discharging his lawyer.'" *Pino-Noriega*, 189 F.3d at 1095 (quoting *Joelson*, 7 F.3d at 177). Otherwise, a defendant "is presumed to assent to his attorney's tactical decision not to have him testify." *Joelson*, 7 F.3d at 177.

> The trial transcript establishes Atta remained silent when his counsel rested without calling him to testify. Dkt. No. 115 at 338. By not speaking up, Atta waived his right to testify, and he may not circumvent this waiver through an ineffective assistance of counsel claim. *Nohara*, 3 F.3d at 1243 (rejecting ineffective assistance of counsel claim because the "defendant [was] silent in the face of his attorney's decision not to call him as a witness . . . .").

> Even if the Court were to disregard Atta's waiver, no prejudice resulted. Trial counsel's declaration states Atta desired to take the stand and deny selling drugs to the decedent on May 20, 2020. Dkt. No. 163-7 ¶ 8. The evidence to the contrary was overwhelming. The evidence at trial included:

> - Snapchat messages between Atta and the decedent arranging for the decedent to pick up drugs from Atta on May 20, 2020 (Dkt. No. 114 at 185–89; Trial Ex. 14 at 5; Trial Ex. 15 at 8);[14]

- Video surveillance showing the decedent at Atta's residence on May 20, 2020 (Dkt. No. 115 at 293–97; Trial Exs. 76–80); and

- Atta's business ledger documenting the sale of twelve 30 mg Percocet pills to the decedent on May 20, 2020 (Dkt. No. 115 at 262–67; Trial Ex. 46).[15]

[14] Efren Lapuz, a private investigator Atta retained in connection with this motion, opines Atta's use of the abbreviation "PU" in his May 20, 2020 message to the decedent does not mean "pick up." Dkt. No. 163-6 ¶ 10 (explaining "PU" in "Snapchat and Instagram language means a 'pop-up' message from the sender to the recipient."). The evidence at trial, however, established Atta sent a Snapchat message May 20th inviting the decedent to "PU" twelve 30mg Percocet pills at Atta's "casa" (Spanish for house): "!!$300 – 12 PERC30's PU casa." Dkt. No. 114 at 185–89; Trial Ex. 14 at 5; Trial Ex. 15 at 8. Lapuz's opinion is also undermined by the video footage showing the decedent and his vehicle at Atta's residence on May 20, 2020. Dkt. No. 114 at 154–55; Dkt. No. 115 at 293–96; Trial Exs. 76–80 (stipulation and video footage showing the decedent at Atta's residence on May 20, 2020).

[15] Lapuz also relies on the absence of a May 20, 2020 Venmo transaction to conclude no transaction took place on that date. Dkt. No. 163-6 ¶¶ 8–9. Atta's ledger, however, documents the transaction. The United States' evidence also established Atta frequently received cash for his narcotics transactions. Dkt. No. 115 at 246–54; Trial Ex. 41. The absence of a May 20, 2020 Venmo record, therefore, does not create a reasonable probability a jury would find the May 20, 2020 sale to the decedent documented in Atta's ledger did not occur.

21-cr-1289-LAB

> This evidence leaves no reasonable probability the jury would have reached a different verdict had Atta taken the stand and denied selling the decedent drugs on May 20, 2020. *See Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir. 2009) (holding "[t]he *Strickland* standard is applicable when a petitioner claims an attorney was ineffective by denying him his constitutional right to testify" and finding no prejudice because "the state court was not unreasonable in finding that this testimony would not have assisted [petitioner's] case.").
>
> In sum, Atta waived his right to testify by not affirmatively invoking it. Atta also cannot establish prejudice because there is no reasonable probability the jury would have reached a different verdict if he had taken the stand and denied selling drugs to the decedent on May 20, 2020. The Court, therefore, recommends denying Atta's Motion for a New Trial on this ground.

(*id.* (alterations in original)).

Atta objects to this part of Judge Butcher's R&R. Relying on *Joelson*, *supra*, 7 F.3d at 179, he maintains Judge Butcher incorrectly analyzed his argument under the *Strickland* standard. (Dkt. 204 at 8). *Joelson* doesn't help Atta. In *Joelson*, the Ninth Circuit determined the record was insufficiently complete to permit the appellate court to "evaluate Joelson's claims of ineffective assistance regarding counsel's refusal to allow him to testify and to call witnesses." *Joelson*, 7 F.3d at 179. Here, in contrast, over the Government's objection the Court granted Atta's motion to consider his *Strickland* claims before direct appeal and to conduct such hearings as necessary to complete the record.

After a review of the evidence, this Court agrees with the R&R that there is no persuasive evidence establishing Atta wanted to testify at trial. Although trial counsel filed declarations stating that before trial Atta expressed a desire to testify, (Dkt.163-7 ¶ 8; 188-2 ¶ 8), no believable evidence has been presented that counsel at trial prevented Atta from doing so. Indeed, Atta himself has not provided

a declaration making that claim. *See Hoyos v. Davis*, No. 09-cv-388-L-NLS, 2017 WL 4409437, at *76 (S.D. Cal. Oct. 4, 2017) ("Petitioner submitted two separate declarations in support of his state habeas petition, but in neither does Petitioner even state that he wanted to testify at trial."); *see also Gomez v. California*, No. 18-cv-00642-DAD-SAB-HC, 2019 WL 358631, at *20 (E.D. Cal. Jan. 29, 2019) (petitioner not entitled to habeas relief based on bare claim he wanted to testify at trial but retained counsel didn't permit it).

As to prejudice, Atta argues, "[t]he R&R focuses solely on the evidence presented at trial while ignoring the evidence that trial counsel should have presented." (Dkt. 204 at 8). But again, Atta has not provided a declaration setting forth the substance of his hypothetical testimony. *See Hoyos*, 2017 WL 4409437, at *76. Additionally, considering the overwhelming inculpatory evidence the Government presented at trial, *Henry v. Ryan*, 720 F.3d 1073, 1093 (9th Cir. 2013) (quoting *Samayoa v. Ayers*, 649 F.3d 919, 928 (9th Cir. 2011)), Atta "has not shown how his testimony would have made a difference to the outcome of the trial," *see Hoyos*, 2017 WL 4409437, at *67.

The Court **OVERRULES** Atta's objection to this finding and **ADOPTS** this portion of Judge Butcher's R&R.

### 4. Forensic Pathologist

Atta argues trial counsel performed ineffectively by failing to hire a forensic pathologist before trial to raise doubt whether the decedent "likely did not die as a result of ingesting fentanyl." (Dkt. 163 at 4; 188 at 8–12). Trial counsel admits he never met nor conferred with a forensic pathologist. (Dkt. 163-7 ¶ 2).

Judge Butcher found that trial counsel's failure to consult a forensic pathologist amounted to ineffective assistance. (Dkt. 202 at 5–9). According to Judge Butcher:

> An attorney's tactical decisions are given considerable discretion, but only after "procuring the

information necessary to make such a decision." *Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006). "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence . . ." *Harrington v. Richter*, 562 U.S. 86, 106 (2011). "[W]hen the prosecutor's expert witness testifies about pivotal evidence or directly contradicts the defense theory, defense counsel's failure to present expert testimony on that matter may constitute deficient performance." *Duncan v. Ornoski*, 528 F.3d 1222, 1235 (9th Cir. 2008). The need to consult an expert is "especially important" when an attorney "has no knowledge or expertise about the field." *Id.*

In his opening statement, trial counsel's theory of the defense focused on causation: (1) the decedent did not die of a fentanyl overdose; and, regardless, (2) Atta sold Percocet, not fentanyl. Dkt. No. 114 at 48–52. The medical causation defense required a medical expert to review, interpret, and analyze voluminous medical records, including the decedent's hospitalization one month prior to his death and the autopsy report. *See* Dkt. No. 188 at 4–12, Exs. 1–3 (medical records lodged with the Court and filed under seal at Dkt. No. 200). The United States had such an expert. Atta did not.

All conditions identified by the Supreme Court and the Ninth Circuit requiring an expert are present here: (1) trial counsel's causation defense required consultation with an expert and/or expert testimony; (2) the United States' expert witness testified about pivotal evidence that contradicted the defense; and (3) trial counsel had no expertise in the field. *Harrington*, 562 U.S. at 106; *Duncan*, 528 F.3d at 1235. The Court, therefore, finds trial counsel's failure to consult a medical expert was deficient.

The Court also finds resulting prejudice. Atta's trial counsel attempted to present a medical defense unaided by a medical expert. It did not go well. In fact, it went so poorly that, in his closing argument, trial counsel abandoned the medical causation defense proffered in his opening statement and affirmatively conceded the decedent died of a fentanyl overdose. Dkt. No. 115 at 379

("What was the substance that killed [the decedent]? It was fentanyl, undoubtedly.").

This abandonment followed trial counsel's cross-examination of the United States' medical expert. The United States' expert successfully parried trial counsel's cross-examination about other possible causes of death (Dkt. No. 114 at 145–52) to the point that trial counsel conceded both the expert's opinion and credibility in his closing argument (Dkt. No. 115 at 375 ("Dr. Platt was credible. . . I completely agree. I couldn't agree more.")).

A defense expert, however, would have assisted trial counsel with formulating questions and providing a roadmap for cross-examining the United States' expert. Atta's Motion attaches a declaration from Dr. Jane Turner, a certified forensic pathologist, who provides such a roadmap.

Dr. Turner reviewed the medical records and concluded there is "poor scientific evidence for the proposition [the decedent] died of acute opioid intoxication." Dkt. No. 163-1 ¶ 6. Dr. Turner bases her conclusion on: (1) the possibility of postmortem redistribution of fentanyl (*id.* ¶ 7); (2) the absence of anatomic findings supporting a fentanyl overdose (*id.* ¶ 8); (3) indicators of COVID-19 (*id.* ¶ 10); (4) hospitalization records from April 2020 showing a right brain pathology (*id.* ¶ 11); and (5) other "severe medical issues, as evidenced by [the decedent's] hospitalization from April 18-25, 2020" (*id.* ¶ 12). Dr. Turner also identified additional necessary examinations and consultations the United States' expert did not conduct. *Id.* ¶¶ 9, 11; *see also* Dkt. No. 188-4 ¶¶ 8, 10 (Declaration of John C. Ellis proffering Dr. Turner's additional opinions following her review of recently obtained medical records).

The United States persuasively argues Dr. Turner's postmortem redistribution theory is inapplicable here. Dkt. No. 164 at 32–36. Dr. Turner's postmortem redistribution theory relies on studies involving transdermal fentanyl application (i.e., through a skin patch). Dkt. Nos. 163-2, 163-3. This case involves oral ingestion of fentanyl

contained in pills. At the March 6, 2024 hearing, Atta's new counsel conceded that no studies support postmortem redistribution of orally ingested fentanyl. Dkt. No. 201 at 8.

The United States also responds to other parts of Dr. Turner's declaration. Dkt. No. 164 at 36–40. Evaluating competing expert opinions, however, is a task for a jury. The Court's role is to determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111–12 (quoting *Strickland*, 466 U.S. at 693).

The Court finds Atta has met this standard. Trial counsel pursued a medical causation defense no attorney unskilled in the medical arts is qualified to present without expert assistance. Trial counsel took one position in the opening statement (i.e., the evidence would not establish the decedent died of a fentanyl overdose) and said just the opposite in the closing argument (i.e., fentanyl "undoubtedly" was the cause of death). The damage this inflicted upon the credibility of the defense is unknown and unknowable, but the Court cannot imagine that, in a short, two-day trial, the jury did not take notice.

The evidence supporting a fentanyl overdose as the cause of death remains strong. But the United States' expert could not say the amount of fentanyl in decedent's blood was not survivable. Dkt. No. 114 at 130 ("[I]t's not just enough to say that when you're talking about something in a fatal level, there is one number and everything above it, everyone is dead . . . . That's not the case."). Thus, although the level of fentanyl in the decedent's system was exceedingly high (more than 10 times a therapeutic dose (*id.*)), it was theoretically survivable.

21-cr-1289-LAB

The decedent also had a "myriad of preexisting health conditions" to consider as possible alternative causes of death. Dkt. No. 188 (Ex. 3 at 21CR1289-000006).[6] The decedent was hospitalized and diagnosed with a stroke one month before his death. *Id.* Further, based on his overall poor health, including cerebral vasculitis and a possible auto-immune disease, the decedent was awaiting transfer to the Wounded Warrior Battalion. *Id.* Although trial counsel elicited some of these preexisting conditions in the cross-examination of the United States' expert, they were effectively removed from the jury's consideration when trial counsel conceded the issue in his closing argument.

[6] This record is also filed under seal. Dkt. No. 200 at 10.

Dr. Turner also opines that the autopsy performed by the United States' expert was incomplete. Dkt. No. 163-1 ¶¶ 9, 11. The jury did not have the opportunity to consider these alleged shortcomings, which, in combination with the decedent's stroke one month prior to his death and overall poor health, establishes a reasonable probability that at least one juror would have found reasonable doubt. *See Browning v. Baker*, 875 F.3d 444, 475–76 (9th Cir. 2017) (finding prejudice under *Strickland* when "at least one juror would have harbored reasonable doubt").

In sum, trial counsel attempted to present a medical causation defense unassisted by an expert. This was deficient and prejudicial and, therefore, constitutes ineffective assistance of counsel under *Strickland*.

(*id.* (alterations in original)).

The Government objects to this finding, arguing that counsel did not need a forensic expert because he made a strategic decision to argue there was reasonable doubt the decedent died from fentanyl *not* sold by Atta. (Dkt. 203 at 2–5; 205 at 1–2). But trial counsel apparently didn't settle on that theory until after the trial was well underway. As the R&R correctly recounts "[i]n his opening statement, trial counsel's theory of the defense focused on causation . . . [that] the decedent

did not die of a fentanyl overdose. (Dkt. 202 at 5). While it is true that trial counsel also suggested the alternate theory that Atta did not sell the decedent the drugs that killed him, (*id*. at 5–6), the R&R concludes trial counsel was forced to abandon the cause of death theory because the theory was not supported by a qualified medical expert who could raise doubt or call into question the findings offered by the Government's expert, (*id.* at 6).

The Ninth Circuit has stated, "Although it may not be necessary in every instance to consult with or present the testimony of an expert, when the prosecutor's expert witness testifies about pivotal evidence or directly contradicts the defense theory, defense counsel's failure to present expert testimony on that matter may constitute deficient performance." *Duncan*, 528 F.3d at 1235 (collecting cases). Considering trial counsel's opening statement, in which he expressly embraced lack of causation as one of his dual theories of defense, the Court agrees with the R&R that counsel should have consulted with a forensic pathologist to assist in plotting and supporting the defense of Atta's case. Counsel failure to do so amounted to ineffective assistance. *See Duncan*, 528 F.3d at 1236–37. The Court **ADOPTS** this portion of the R&R.

As for the prejudice prong, the Government stresses that overwhelming evidence supports the conclusion the decedent died from a fentanyl overdose. Accordingly, the Government argues Atta has not shown a substantial likelihood that he was prejudiced by counsel's failure to hire a forensic pathologist. (Dkt. 203 at 5–10; 205 at 2). The Court agrees.

Counsel for Atta have offered the declaration of Dr. Jane Turner, a forensic pathologist. Dr. Turner opines the decedent did not die of acute opioid intoxication. Rather, she points to other preexisting medical conditions of the decedent that she posits may have contributed to his death. (Dkt. 163-1 ¶ 6). Dr. Turner bases her opinion on: (1) postmortem redistribution of fentanyl, (*id.* ¶ 7); (2) missing anatomic findings in the autopsy report that would have indicated opioid overdose, (*id.* ¶ 8);

(3) the alleged inexperience of Dr. Bryan Platt, the Government's expert, in not consulting with a neuropathologist, (*id.* ¶ 9); (4) indicators of COVID-19, (*id.* ¶ 10); (5) medical records showing a right brain pathology, (*id.* ¶ 11); and (6) other medical issues from decedent's hospitalization between April 18, 2020, and April 25, 2020, (*id.* ¶ 12).

In his R&R, Judge Butcher properly concluded that Dr. Turner's postmortem redistribution theory was inapposite because it relied on transdermal fentanyl application, not oral ingestion. (Dkt. 202 at 7). Specifically, Dr. Turner incorrectly determined that the decedent's fentanyl level was higher postmortem. Additionally, Dr. Turner failed to address other significant findings in the toxicology report including that the decedent's blood contained metabolites of fentanyl and substances commonly recognized as "cutting agents" in counterfeit drugs.[1] Acknowledging these errors in Dr. Turner's analysis, Judge Butcher concluded that the evidence supporting a fentanyl overdose "remains strong." (*Id.* at 8).

The record establishes that before beginning his autopsy of the decedent, Dr. Platt was made aware the decedent was unresponsive during a welfare check and that he had recently been admitted to the Naval Medical Center in San Diego a month prior to his death. (Dkt. 114 at 124:22–125:15). Dr. Platt considered the decedent's preexisting health factors, reviewed his medical records, and ruled out other possible causes of death before concluding the decedent died from a fentanyl overdose. (*Id.* at 125:18–127:14, 128:18–129:13, 130:22–134:14, 147:4–152:22, 153:4–154:7). Uncontested evidence of the decedent's toxicology results established that the level of fentanyl in his system was over *fifty* times higher than the accepted therapeutic dose. The toxicology results corroborate and confirm Dr.

---

[1] At a hearing before Judge Butcher, Atta's counsel acknowledged Dr. Turner improperly relied on the postmortem distribution theory, (Dkt. 201 at 7–8), and implicitly abandoned that theory.

Platt's conclusion that the amount of fentanyl detected in the decedent's system was a fatal overdose. (*Id.* at 130:19–21). While, concededly, the evidence admits of other contributing factors leading to the decedent's death, none of them overcome the overwhelming evidence that decedent died from a fentanyl overdose. Stated differently, the likelihood of a different result in this case, although perhaps conceivable, is not substantial. *Richter*, 562 U.S. at 112; *see also United States v. Piers*, 312 F. App'x 69, 70 (9th Cir. 2009) (no ineffective assistance when the Government presented overwhelming evidence establishing defendant's guilt.); *Hart v. Gomez*, 174 F.3d 1067, 1072 (9th Cir. 1999) (attorney's errors are not prejudicial when evidence against the defendant is overwhelming).

Having carefully reviewed all evidence presented during Atta's trial, and all additional evidence offered in support of and in opposition to Atta's post-trial *Strickland* motion, the Court concludes Atta has failed to establish that counsel's error in failing to consult a forensic pathologist "actually had an adverse effect on the defense." *Strickland, supra*, 466 at 693. The Court accordingly **REJECTS** the finding of prejudice in the R&R.

The Court **ADOPTS IN PART AND REJECTS IN PART** this portion of Judge Butcher's R&R.[2]

### III.   CONCLUSION

"After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." *Richter*, 562 U.S. at 109.

The Court (1) **OVERRULES** Atta's objections to the R&R, (Dkt. 204);

---

[2] The Court rejects Atta's related arguments urging cumulative *Strickland* error on the grounds that Atta has failed to establish trial counsel was ineffective or, if he was, that the alleged errors resulted in prejudice.

21-cr-1289-LAB

(2) **SUSTAINS** the Government's objection to the R&R's conclusion that Atta's defense was prejudiced by trial counsel's failure to hire a forensic pathologist, (Dkt. 203); (3) **ADOPTS IN PART AND REJECTS IN PART** Judge Butcher's R&R, (Dkt. 202); and (4) **DENIES** Atta's motion for a new trial, (Dkt. 163, 170).

The Clerk of the Court is ordered to reassign this case to District Judge Todd W. Robinson to conduct all further proceedings.

**IT IS SO ORDERED**.

Dated: April 30, 2024

Honorable Larry Alan Burns
United States District Judge

21-cr-1289-LAB